UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

EGV HOLDINGS, LLC, a Florida
Limited Liability Company,

     Plaintiff,

v.

WILLIAM LAMBERT, III, a/k/a
BILL STAXX, an individual, and
CHATTIN WITH $TAXX LLC, a
Connecticut limited liability
company,

     Defendants.

_____/

## COMPLAINT

Plaintiff, EGV HOLDINGS, LLC ("EG") hereby files this complaint against Defendants, WILLIAM LAMBERT, III a/k/a BILL STAXX ("Lambert") and CHATTIN WITH $TAXX LLC, a Connecticut limited liability company ("Chattin") and alleges as follows:

## NATURE OF THE CASE

1.     This is a diversity action asserting Florida state law claims for slander per se, slander, defamation, and tortious interference with a business relationship, as a result of Lambert and Chattin's publication of slanderous and defamatory statements regarding EG and its members that are false, harmful, and offensive to EG.

## PARTIES

2.      EG is a Florida limited liability company with its principal place of business in Florida.

3.      The members of EG are all citizens and residents of the State of Florida.

4.      Upon information and belief, Lambert is a citizen and resident of the State of Connecticut.

5.      Upon information and belief, Chattin is a Connecticut limited liability company with a principal place of business in Connecticut.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 as this is an action between EG who is a citizen of the State of Florida, whose members are all citizens of the State of Florida, Lambert, who upon information and belief is a citizen of Connecticut and Chattin who, upon information and belief, is a Connecticut limited liability company with a principal place of business in Connecticut, and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

7.      Upon information and belief, both Lambert and Chattin are subject to the personal jurisdiction of this Court. First, Lambert and Chattin are subject to this Court's general jurisdiction as their contacts with Florida are extensive and

pervasive to the point where both are at home in Florida due to Lambert's repeated harassing and false allegations made against both EG and its members as discussed herein through Chattin. Second, specific jurisdiction exists as Lambert has purposely directed his activities at Florida and Lambert had knowledge that the effects of his actions would be felt in Florida.

8.     Venue is proper in this matter pursuant to 28 U.S.C. § 1391(a)(2). In considering transactional venue for tort cases, courts typically consider both where the activity arose and where the harm was felt. *Seidel v. Kirby*, 296 F. Supp. 3d 745, 752 (D. Md. 2017). Specifically, in an online defamation case, venue is proper where the injured party resides pursuant to 28 U.S.C. § 1391(a)(2). *Id.* (citing *Capital Corp. Merchant Banking, Inc. v. Corporate Colocation, Inc.*, 2008 WL 4058014 *3 (M.D. Fla. 2008)). Here, EG and all of its members reside within this district and EG has suffered a negative impact to its business in this district as a result of Lambert's statements.

## FACTUAL BACKGROUND

9.     EG is in the business of manufacturing and distributing vodka.

10.    Upon information and belief, Lambert is a natural person who promotes himself through social media mainly through videos on YouTube Channel entitled "Chattin With Staxx Show."

11.     Upon information and belief, Lambert runs a talk show on his YouTube channel where he discusses organized crime, his former involvement with prison gangs, others allegedly involved with organized crime, and other various issues Lambert wishes to discuss.

12.     Upon information and belief, Lambert does this to draw various viewers to his social media pages so he can derive additional revenue from ads and via donations.

13.     Upon information and belief, Lambert directs this revenue to Chattin.

14.     Upon information and belief, Lambert has specifically targeted EG and its members by making baseless and false allegations, harassing the members, and encouraging his viewers to similarly harass both EG and its members.

15.     On October 7, 2023, Chattin published a video on YouTube Live entitled "Joey Merlino V's Dom Cicale feat Gene Borello Chattin with Staxx #mob #mobboss #boss" (the "October 7 Video").

16.     The October 10 Video contains at least one false and defamatory statement about EG and its members.

17.     First, Lambert states:

Did you know that Mr. Dominic Cicale's business partner in EG Vodka is facing a fifteen year indictment. He's out on bond. I think he's out on bond but he got indicted, he's facing fifteen years in prison for taking people's money for EG Vodka and not delivering the product.

October 7 Video at 12:15.

18.     Lambert went on to say that "EG Vodka has some major major legal problems right now and I have all that information." The October 7 Video at 13:06.

19.     The indictment Lambert appeared to reference, had nothing to do with EG and was dismissed without prosecution prior to the time the October 7 Video was published.

20.     Lambert also described EG as a "[t]ypical mafia *Ponzi* scheme. And if you guys are stupid enough to fall for that [expletive] and order that you're not going to get your product you're going to be sitting there forever, he's going to steal your money and that's it." The October 7 Video at 13:20.

21.     On October 9, 2023, EG sent a demand letter to Lambert informing him of the inaccuracy of his video and demanding that he take the video down and post a public retraction and apology. A copy of this correspondence is attached hereto as Exhibit "A."

22.     Lambert has failed to comply with this demand.

23.     Lambert was not deterred and Chattin published another video entitled "@TheSkinnywithJoeyMerlin V's @mafiaroundtable RATS calling Stand up Men RATS" to his YouTube channel on October 10, 2023 (the "October 10 Video").

24.     The October 10 Video contains at least one false and defamatory statement about EG and its members.

25.     Lambert continues his false allegations against EG by stating that "I looked at the reviews on your EG Vodka. You got a lot of sales but nobody got their merchandise." The October 10 Video at 4:08.

26.     No such reviews existed at the time this statement was made.

27.     Lambert then states that this is because the ". . . founder of EG Vodka is under federal indictment, **right now** and he's facing fifteen years in prison for a money scam." The October 10 Video at 4:30 (emphasis added).

28.     Later in the video he again accuses EG Vodka of being a "typical mafia *ponzi* scheme." The October 10 Video at 4:56.

29.     He then encourages his viewers to not "buy that product if you want to save your money because you won't ever get your [expletive]. Go look at the reviews for yourself." The October 10 Video at 5:44.

30.     Upon information and belief, Chattin has published the October 7 Video and the October 10 Video as a malicious effort to damage and destroy EG's reputation among the consuming public.

31.     Upon information and belief, Lambert has every intention of continuing his campaign against EG for the purpose of driving revenue to himself through Chattin.

32.     Upon information and belief, Lambert knew that publishing a video slandering EG would garner more views.

33.     None of the aforementioned statements about EG are true. No member of EG is currently under federal indictment nor is EG. EG has no legal issues. EG is certainly not a *Ponzi* scheme. EG has never received any negative publicly available reviews regarding a failure to timely deliver its products.

34.     Lambert knew or should have known that the aforementioned statements were false.

35.     Upon information and belief, Lambert was subjectively aware of the probable falsity of the aforementioned statements at the time Chattin published them.

36.     To date Lambert has failed to take down the defamatory statements or issue a repudiation despite EG's written demand.

37.     In fact, on October 12, 2023, Chattin published a video entitled "We are the GoodGuys Pt 2 Gangster until the end #mobrat #mafiarat #rat," wherein Lambert stated "tell your [expletive] lawyers stop sending me cease and desists because I'm not going to stop [pause] ever."

38.     Upon information and belief, the aforementioned defamatory statements were made by Lambert and published by Chattin with actual malice. He knew that the statements either were false or with reckless disregard for the fact that they were false.

39.     On October 13, 2023, Chattin published a video entitled "Big Brother Foundation with Gene Borello and Dominic Cicale #bigbrother #mobrats #mafiarats" wherein Lambert stated "I'm not playing games with you, I'm here to destroy you and that's what I'm gonna do."

40.     The aforementioned defamatory statements Chattin published have caused damage to EG's reputation and character within its industry, including but not limited to its prospective and current business relations.

**COUNT I – SLANDER PER SE AGAINST LAMBERT AND CHATTIN**

41.     EG repeats and realleges by reference the allegations in paragraphs 1 through 40 as if fully set forth herein.

42.     Upon information and belief, Chattin posted the October 7 Video on October 7, 2023.

43.     Upon information and belief, Chattin posted the October 10 Video on October 10, 2023.

44.     Upon information and belief, both the October 7 Video and the October 10 Video contain multiple false and defamatory statements about EG, including that one of its members is being indicted for actions taken on behalf of EG, EG is a *Ponzi* scheme, and that EG does not deliver its product to its customers.

45.     None of the aforementioned statements about EG are true.

46.     Upon information and belief, Lambert knew these statements to be false at the time Chattin published them, or at least was subjectively aware of the probable falsity of the aforementioned statements at the time Chattin published them.

47.     Upon information and belief, Lambert did not make reasonable attempts to verify the false and defamatory statements that were made about EG before either the October 7 Video or the October 10 Video (collectively the "Videos").

48.     Upon information and belief, Lambert knew the statements made in the Videos were false and Lambert acted with reckless disregard of whether they were true or not.

49.     Upon information and belief, Chattin published these false statements via YouTube and identified EG by its name and its line of business during the Videos so that individuals who watched them would know that that the statements made in the Videos were about EG.

50.     Upon information and belief, Lambert's false stories were generated and communicated with actual malice, total disregard for the truth, and in the complete absence of any special privilege.

51.     Upon information and belief, Lambert had no basis for claiming that the statements in the Videos were true.

52.     Upon information and belief, the Videos have been viewed by thousands of people.

53.     Upon information and belief, the Videos are still available to be viewed by the public.

54.     Upon information and belief, Lambert's false and defamatory statements made and published in the Videos were disparaging and have produced damage to EG and to EG's name, character and reputation.

55.     Upon information and belief, Lambert's false statements have damaged EG because his statements attribute conduct, characteristics, and conditions incompatible with the proper exercise of EG's lawful business and duties as a an importer and distributor of spirits. These untrue statements have damaged EG's reputation and goodwill.

56.     EG is entitled to general and special damages for impairment to its name, character and reputation.

57.     Additionally, EG requests an award of punitive damages and attorneys' fees beyond and in excess of those damages necessary to compensate EG for injuries resulting from Lambert's conduct.

58.     Further, as a direct and proximate result of the foregoing, EG is entitled to an order permanently enjoining Lambert and Chattin and all of their respective agents, officers, employees, representatives, successors, assigns,

attorneys, and all other persons acting for, with, by, through, or under authority from Lambert and Chattin, or in concert or participation with Lambert and Chattin, and from: making, disseminating, broadcasting, or publishing any statements that EG or its members are under federal indictment, engage in fraudulent behavior, and/or fail to deliver their product, as well as an order requiring Lambert and Chattin to retract, remove, and repudiate in full all defamatory and disparaging statements made regarding EG.

### COUNT II – SLANDER AGAINST LAMBERT AND CHATTIN

59.     EG repeats and realleges by reference the allegations in paragraphs 1 through 40 as if fully set forth herein.

60.     Lambert's statements and Chattin's action in posting the Videos constitute actionable slander against EG pursuant to Chapter 836, Florida Statutes.

61.     Lambert's false and defamatory statements made during the Videos were disparaging, and have produced damage to EG, and to EG's name, character and reputation.

62.     Chattin's publication of Lambert's false and defamatory statements made during the Videos were disparaging, and have produced damage to EG, and to EG's name, character and reputation.

63.    Upon information and belief, both Lambert and Chattin were subjectively aware of the probable falsity of the statements made during the Videos at the time Chattin published both.

64.    Both Lambert and Chattin's actions constitute slander, and as such, EG is entitled to special damages in an amount to be proven at trial.

65.    The actions or omissions of both Lambert and Chattin demonstrate malice, egregious defamation, and insult.

66.    These actions or omissions were undertaken with reckless disregard of the falsity of the speech and its effect on EG.

67.    EG is entitled to general and special damages for impairment to its name, character and reputation.

68.    Additionally, EG requests an award of punitive damages and attorneys' fees beyond and in excess of those damages necessary to compensate EG for injuries resulting from Lambert and Chattin's conduct.

69.    Further, as a direct and proximate result of the foregoing, EG is entitled to an order permanently enjoining both Lambert and Chattin and all of their respective agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from either Lambert or Chattin, or in concert or participation with either Lambert or Chattin, and from: making, disseminating, broadcasting, or publishing any

statements that EG or its members are under federal indictment, engage in fraudulent behavior, and/or fail to deliver their product, as well as an order requiring Lambert and Chattin to retract, remove, and repudiate in full all defamatory and disparaging statements made regarding EG.

### COUNT III – TORTIOUS INTERFERENCE
### WITH A BUSINESS RELATIONSHIP AGAINST LAMBERT AND CHATTIN

70.     EG repeats and realleges by reference the allegations in paragraphs 1 through 38 as if fully set forth herein.

71.     At all material times, EG was engaged in the business of producing and selling vodka to customers throughout the United States.

72.     Both Lambert and Chattin were aware of EG's business.

73.     Lambert and Chattin knew or should have known that Lambert's statements regarding EG would impact its business.

74.     Chattin knew that publishing Lambert's statements regarding EG would impact EG's business.

75.     Lambert made these statements knowingly and intentionally in order to damage EG's ability to conduct business.

76.     Chattin had actual knowledge that Lambert made these statements knowingly and intentionally in order to damage EG's ability to conduct business.

77.     These statements intentionally and unjustifiably interfered with EG's ability to conduct business.

## PRAYER FOR RELIEF

**WHEREFORE**, EG respectfully requests the Court to enter judgment in its favor and against Lambert and Chattin, as follows:

(a) Awarding EG damages in amounts pertaining to each to be determined at trial, but not less than $75,000, including general, special, consequential, actual, statutory, and punitive damages;

(b) Awarding an accounting to EG for the gains and profits of Lambert and Chattin arising from the unlawful conduct;

(c) Permanently enjoining Lambert and Chattin and their respective partners, agents, representatives, successors, assigns and employees, and any and all persons in active convert or participation with Lambert or Chattin, and their respective executors, administrators, successors, licensees, assigns, subsidiaries, parents, affiliates, divisions, co-venturers, partners, officers, directors, employees, agents, shareholders, managers, representatives, consultants, and any and all other persons, corporations, or other entities acting under the supervision, direction, control, or on behalf of any of the foregoing, and each of them, from: making, disseminating, broadcasting, or publishing any statements that EG or its members are under federal indictment, engage in fraudulent behavior, and/or fail to deliver their product

14

(d) Issuing an order requiring Lambert and Chattin to retract, remove, and repudiate in full all defamatory and disparaging statements made regarding EG;

(e) Awarding EG its attorneys' fees and costs;

(f) Pre-judgment and post-judgment interest; and

(g) Granting EG such other and further relief as the Court deems just and proper.

Dated October 17, 2023

Respectfully Submitted by:

Ward Damon, PL
Attorneys for the Plaintiff
4420 Beacon Circle
West Palm Beach, FL 33407
Tel.: 561.842.3000 | Fax: 561.842.3626
litservice@warddamon.com
msarofsky@warddamon.com

*/s/ Mahra Sarofsky*_____
Mahra Sarofsky, Esq.
Florida Bar No.: 33637